## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JOSE ROSARIO,                          :

          **Plaintiff**          :     CIV. ACTION NO. 3:21-CV-1840

          v.                       :          (JUDGE MANNION)

J. RIVELLO, *et al.*,                  :

          **Defendants**        :

### MEMORANDUM

Presently before the court in this prisoner civil rights case are the parties' cross motions for summary judgment. For the reasons set forth below, plaintiff's motion for summary judgment will be denied and defendants' motion for summary judgment will be granted.

## I. BACKGROUND

Plaintiff, Jose Rosario, has been incarcerated in Huntingdon State Correctional Institution ("SCI-Huntingdon") at all relevant times. He brings the instant lawsuit under 42 U.S.C. §1983 alleging unconstitutional conditions of confinement in violation of the Eighth Amendment and negligence under state law. (Doc. 1). The complaint alleges several adverse conditions of confinement, including: (1) a lack of ventilation in the cells; (2) vents in the prison that are filled with trash and animal droppings; (3) cells

that are too small for double occupancy; (4) deteriorating and malfunctioning toilets in the cells; (5) black mold that grows on walls in the prison, which has allegedly caused Rosario chronic respiratory problems; (6) basements in the prison that are often flooded; (7) the presence of mice, rats, and other vermin in the prison, which has allegedly resulted in Rosario being bitten by rodents and insects while he sleeps; (8) electrical wiring in the prison that is outdated and poorly maintained, which purportedly has caused power outages and electrical fires; (9) narrow catwalks and outdated cell locking systems that allegedly make it difficult to evacuate the prison in an emergency; (10) decaying physical structures in the prison; and (11) the presence of asbestos in the prison. (*See generally id.*) The complaint names as defendants various supervisory officials of SCI-Huntingdon and the Pennsylvania Department of Corrections ("DOC"), including J. Rivello, the superintendent of SCI-Huntingdon; K. Kauffman,[1] the former superintendent of SCI-Huntingdon; J. Spyker, the deputy superintendent for centralized services at SCI-Huntingdon; S. Walter, the former deputy superintendent for centralized

---

[1] Defendants have filed a suggestion of death pursuant to Federal Rule of Civil Procedure 25, indicating that defendant Kauffman has died since the filing of this lawsuit. (Doc. 64). Because the court concludes below that summary judgment in Kauffman's favor is warranted on the merits of Rosario's claims, the court will not address whether dismissal or substitution of defendant Kauffman is necessary under Rule 25.

services at SCI-Huntingdon; G. Ralston, a unit manager at SCI-Huntingdon; J. Wetzel, the former secretary of the DOC; and T. Bickell, the DOC's executive deputy for institutional operations. (*Id.* at 2-4).

Defendants answered the complaint on April 29, 2022. (Doc. 25). Following the close of fact discovery, Rosario filed a motion for summary judgment on June 14, 2023, and defendants filed a motion for summary judgment on February 28, 2024. (Docs. 53, 66). Briefing on both motions is complete and they are ripe for the court's review. (Docs. 54, 62, 68, 71).

## II. MATERIAL FACTS[2]

---

[2] Local Rule 56.1 requires a motion for summary judgment to "be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried" and requires that the party opposing a motion for summary judgment file a statement responding to the numbered paragraphs in the movant's statement of material facts, which "shall include references to the parts of the record" that support the nonmovant's opposition to the motion. M.D. Pa. L.R. 56.1. The rule additionally states that "[s]tatements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements." *Id.* Defendants have filed a statement of material facts in support of their motion as required by Rule 56.1. (Doc. 67). Rosario, however, has failed to comply with Rule 56.1. The statement of facts he filed in support of his motion does not contain any nonconclusory assertions of fact or cite any record evidence to support his statement. (*See* Doc. 55). Rosario has additionally failed to file a response to defendants' statement of facts as required by Local Rule 56.1. Despite Rosario's failure to comply with the Local Rules, the court has reviewed his summary judgment filings to determine whether they create a genuine issue of material fact in order to give his filings a liberal construction as a *pro se* litigant. Where defendants have provided an assertion of fact that

Rosario has been incarcerated in SCI-Huntingdon since he was transferred to the facility in February 2021. (Doc. 67 ¶ 1). During that time, he has never discussed any of the conditions of confinement that give rise to his claims with defendants Rivello, Kauffman, Spyker, Wetzel, or Bickell. (*Id.* ¶¶ 3-12). SCI-Huntingdon has additionally been inspected on a yearly basis during and before Rosario's incarceration in the prison, and no major structural defects have been found. (*Id.* ¶ 15).

## III.   STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F.

---

is support by record evidence and is not refuted by Rosario's filings, the court will cite directly to defendants' statement of material facts.

Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge that burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving

5

party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

## IV. DISCUSSION

At the outset of the court's discussion, the court will deny Rosario's motion for summary judgment. Rosario argues that summary judgment in his favor is appropriate, but he cites no evidence in support of his position other than a medical record indicating that he had "nasal stuffiness" on July 19, 2021. (Doc. 54). This falls well short of meeting his burden to show that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law.

Turning to defendants' motion, defendants argue that they are entitled to summary judgment because: (1) Rosario cannot produce any evidence to show that defendants were personally involved in the alleged civil rights violations; (2) because Rosario's complaint fails to state conditions of confinement or negligence claims upon which relief may be granted and because Rosario has not offered any evidence to establish the elements of

6

these claims; and (3) that defendants are entitled to sovereign immunity with respect to Rosario's negligence claim. (Doc. 68). Rosario opposes the motion and produces declarations from eight other inmates at SCI-Huntingdon to support his claims. (Doc. 71).

The court will first consider the conditions of confinement claim. To state an Eighth Amendment conditions of confinement claim, a plaintiff must allege (1) that he was subjected to an objectively, sufficiently serious deprivation that resulted in the denial of minimal civilized measures of life's necessities and (2) that defendant prison officials were deliberately indifferent to his health or safety. *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The defendant is deliberately indifferent if he "knows of and disregards an excessive risk to inmate health or safety." *Id.* (quoting *Farmer*, 511 U.S. at 837). An evaluation of the context of the claim is necessary. "Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone. . . ." *Id.* at 304.

The court agrees with defendants that summary judgment in their favor is appropriate on the conditions of confinement claim for Rosario's failure to establish their personal involvement. A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally

involved in the violation. *Jutrowski v. Twp. of Riverdale,* 904 F.3d 280, 289 (3d Cir. 2018). The defendant's personal involvement cannot be based solely on a theory of *respondeat superior. Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, for a supervisor to be liable for the actions of a subordinate, there must be allegations of personal direction or actual knowledge and acquiescence. *Id.*

In this case, the record is completely devoid of any evidence that defendants were personally involved in the alleged violations of Rosario's rights. Rosario has not produced a single piece of evidence to show that defendants were aware that Rosario was experiencing the adverse conditions of confinement of which he complains or that they were aware that the conditions of confinement posed any risk of harm to him.

The declarations from other inmates in SCI-Huntingdon that Rosario has produced do not alter this conclusion. Inmate Alexis Maldonado states that: (1) there is no ventilation in his cellblock; (2) temperatures in the prison get excessively hot in the summer; (3) the wiring in the prison is "poorly maintained" leading to lots of power outages; (4) cells in the prison do not have medical emergency buttons; (5) the prison is polluted with mold, asbestos, and mildew; (6) the prison is infested with mice, rats, roaches, spiders, and other pests; (7) toilets and sinks in the prison are rusting; (8)

8

water occasionally comes out of the sink with a bad taste and smell, a brown color, and unknown particles floating in it; (8) the prison's locking mechanisms are "faulty" because each cell is locked individually, meaning that an officer on the block would have to manually unlock each cell in the event of an emergency; (9) the prison's shower facilities are "filthy with trash and bodily fluids"; and (10) the prison provides inmates with inadequate cleaning supplies. (*Id.* at 3-4).

Inmate Ronald Coleman states that: (1) the ventilation system in SCI-Huntingdon has "never worked" in the five years he has been incarcerated in the prison; (2) there is mildew and mold on the walls; (3) there is asbestos in the prison; and (4) the temperature gets excessively hot in the summer. (*Id.* at 5).

Inmate Troy Vincent states that: (1) there is inadequate ventilation in the prison; (2) correctional officers do not follow COVID-19 safety protocols; (3) that food served in the prison is too cold; and (4) that prisoners are given inadequate recreation time. (*Id.* at 6-7).

Inmate John Hightower states that: (1) correctional officers do not follow COVID-19 safety protocols; (2) there is inadequate ventilation and windows in the prison; (3) there are rats, spiders, and bugs in the prison; (4) inadequate cleaning supplies are provided to prisoners; (5) there is mold,

9

mildew, and asbestos in the prison; and (6) there are not enough shower facilities available for inmates. (*Id.* at 8).

Inmate Scott Wilson states that: (1) correctional officers do not follow COVID-19 safety protocols; (2) there is mold on the walls and the paint is chipping; (3) cleaning supplies given to inmates are inadequate; and (4) the catwalks on the third tier of the prison are loose and narrow. (*Id.* at 9).

Inmate Jermaine Henderson states that: (1) there is asbestos, black mold, and mildew in the prison, and defendant Ralston is aware of this fact; (2) water is delivered to cells through lead pipes and frequently comes out of the tap with a gray, brown, or yellow color, frequently has sediment floating in it, tastes "metallic," and smells "like a cesspool"; (3) there are rat and mice droppings in the kitchen areas where meals are prepared; (4) food in the prison is often cold, undercooked, and served on dirty trays; (5) there is inadequate fire prevention equipment in the prison; (6) there is no ventilation in the prison, resulting in excessively hot temperatures in the summer; (7) there is defective plumbing, causing urine to frequently pool on the floor; (8) the showers are polluted with mold and mildew and filled with "gnats[,] small insects, body hairs[,] animal feces, and sewage water"; (9) there are bugs, mice, and other vermin in cells; and (10) the cleaning supplies provided to inmates are inadequate. (*Id.* at 10-13).

10

Inmate Angel Irizarry states that: (1) there is mold, mildew, and asbestos in the prison; (2) there is no ventilation in the prison, leading to excessively hot temperatures in the summer; (3) there are rats in the prison; and (4) the basement has rats, cobwebs, and mildew. (*Id.* at 14).

Inmate Kevin Souffrant states that: (1) correctional officers do not follow COVID-19 safety protocols; (2) showers in the prison are filthy; (3) there is mold on the walls; (4) there are spiders, roaches, and other bugs in the prison; and (5) food is often "dirty with food residue from the last meal" and the trays on which meals are served "smell like the food from the day before." (*Id.* at 15).

As these summaries of the inmate declarations show, none of the declarations state that Rosario was personally affected by the conditions of confinement that the inmates describe or show that the defendants were personally aware that Rosario was affected by those conditions. (*See* Doc. 71 at 3-15). The inmates' general complaints about the conditions of their confinement are not sufficient to create a genuine issue of material fact on whether defendants violated *Rosario's* civil rights. Rosario does not have standing to obtain relief for harm that other inmates purportedly suffered.

In the absence of any evidence as to how defendants were personally involved in the alleged civil rights violations, Rosario's conditions of

confinement claim seeks to hold defendants liable solely based on the fact that they held supervisory roles in SCI-Huntingdon or the DOC. This is plainly insufficient to establish their personal liability. *See Rode*, 845 F.2d at 1207. Thus, because Rosario has not produced any evidence to show that defendants were personally involved in the alleged civil rights violations, the court will grant summary judgment on his conditions of confinement claim.

The court will likewise grant summary judgment to defendants with respect to Rosario's negligence claim because defendants are entitled to sovereign immunity from that claim. Pennsylvania law provides that Commonwealth employees acting within the scope of their employment are entitled to sovereign immunity from most state law tort claims. 1 Pa.C.S. §2310. With ten limited exceptions, *see* 42 Pa.C.S. §8522, Commonwealth employees retain their sovereign immunity with respect to both intentional tort and negligence claims. *Mitchell v. Luckenbill*, 680 F. Supp. 2d 672, 682 (M.D. Pa. 2010) (citing *Holt v. Nw. Pa. Training P'Ship Consortium, Inc.*, 694 A.2d 1134, 1139 (Pa. Commw. Ct. 1997)). None of the ten exceptions to sovereign immunity apply in the instant case, and it is clear that defendants were acting within the scope of their employment because Rosario's claims against defendants are all based on their purportedly deficient performance

12

of their supervisory roles in SCI-Huntingdon or the DOC. Summary judgment will accordingly be granted to defendants on Rosario's negligence claim.

## V.    CONCLUSION

For the foregoing reasons, the court will deny plaintiff's motion for summary judgment, grant defendant's motion for summary judgment, and close this case. An appropriate order shall issue.

**Malachy E. Mannion**
**United States District Judge**

**Dated:** 8/28/24
21-1840-01